# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ANNAMONIQUE M. SILVA,

      Plaintiff,

vs.                                                                                                 No. 00cv0956 BB/JHG

JOANNE B. BARNHART,[1]
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      This matter is before the Court on Plaintiff's (Silva's) Motion to Reverse for Payment of Benefits, or in the Alternative, to Remand for Rehearing, filed February 5, 2001. The Commissioner of Social Security issued a final decision denying Silva's application for supplemental security income. The United States Magistrate Judge, having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, finds the motion to remand is well taken and recommends that it be GRANTED.

      Silva, now twenty-six years old, filed her application for disability insurance benefits and supplemental security income on July 5, 1996, alleging disability since May 10, 1996, due to a brain injury, history of a broken leg, and petit mal seizures. She has a ninth grade education with no past relevant work. On January 3, 1998, the Commissioner's Administrative Law Judge (ALJ) denied benefits, finding Silva's impairments did not meet or equal in severity any of the disorders

---

[1] On November 9, 2001, JoAnne B. Barnhart was sworn in as Commissioner of the Social Security Administration. Thus, she is substituted as Defendant in this action.

described in the Listing of Impairments, Subpart P, Appendix 1. Tr. 21. The ALJ reviewed Listings 11.03, 12.02, and 12.05 and found Silva did not meet the requirements of these Listings. The ALJ further found Silva retained the residual functional capacity (RFC) for light work.[2] Tr. 21. As to her credibility, the ALJ found Silva was not a credible witness. *Id.* Silva filed a Request for Review of the decision by the Appeals Council. On June 8, 2000, the Appeals Council denied Silva's request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Silva seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Barker v. Bowen*, 886 F.2d 289, 291

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, a claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

(10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f) and 416.920(a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson v. Sullivan*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20

3

C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse or remand, Silva makes the following arguments: (1) the ALJ's finding that her seizure disorder is not a severe impairment is not supported by substantial evidence and is contrary to law; (2) the ALJ's application of the grids was contrary to law in light of her nonexertional impairments; and (3) the ALJ's credibility determination is not supported by substantial evidence and is contrary to law.

At step two of the sequential evaluation process, the ALJ found Silva's seizure disorder "would not be 'severe,' within the meaning of the Social Security Act." Tr. 20. Silva contends this finding is not supported by substantial evidence and is contrary to law. The Court agrees. At step two, a claimant is required only to make a "de minimus showing" that her medically determinable impairments, in combination, are severe enough to significantly limit her ability to perform work-related activity. *See Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). An impairment is not severe if it has no more than a minimal effect on an individual's physical or mental abilities to do basic work activities. *See* SSR 85-28, 1985 WL 56856, at *3, *4 (1985).

However, the possibility of several such impairments combining to produce a severe impairment must be considered. 20 C.F.R. § 416.923; *see also* SSR 85-28, 1985 WL 56856, at *3, *4 (1985). To determine whether the claimant's impairments are sufficiently severe, the Commissioner must "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(B); 20 CFR § 416.923. At this stage, the ALJ may not dismiss any of a

4

claimant's impairments as nonsevere and disregard them thereafter. See SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). Instead, the statutes and regulations make it clear that if the claimant's combined impact of the impairments are medically severe, the Commissioner must consider "the combined impact of the impairments throughout the disability determination process." 42 U.S.C. § 423(d)(B); 20 CFR § 416.923.

Additionally, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Although a not severe impairment standing alone may not significantly limit an individual's ability to do basic work activities, it may be critical to the outcome of a claim when considered with limitations or restrictions due to other impairments. *Id.* In some instances, limitations due to a "not severe" impairment in combination with limitations imposed by an individual's other impairments, may prevent a claimant from performing past relevant work or may narrow the range of other work that the individual may still be able to do. *Id.*

In this case, the record indicates that in 1996 Silva fell from a truck and suffered a severe traumatic brain injury. Tr. 120. Specifically, Silva sustained an acute subdural hematoma, delayed intracerebral hematomas, and intracranial hypertension. Tr. 118-20. Dr. Haq Babur performed bilateral frontal bur holes for a ventriculostomy for drainage and intracranial pressure monitoring. Tr. 120. Dr. Babur also performed (1) a right temporal with subtemporal craniectomy for the evacuation of acute subdural and intratemporal hematoma and (2) a bicoronal frontal craniotomy for the evacuation of intrafrontal hematomas. *Id.* At the time of her

5

discharge, Dr. Babur prescribed Dilantin[3] and strongly recommended she remain on it long term due to the extent of her brain injury because she would be prone to seizures. Tr. 121. Silva was later transferred to Health South Rehabilitation Hospital in Albuquerque. Dr. Anthony Reeve, Health South's medical director, discontinued Silva's Dilantin because of sub-therapeutic levels and possibly an adverse drug reaction. Tr. 140, 141. Dr. Reeve switched Silva to Tegratol, another anticonvulsive medication. Tr. 140.

At the administrative hearing, Mary Jane Lucero, Silva's mother-in-law, testified Silva suffered from seizures three times a week in spite of being on Tegretal 200 mg three times a day. Tr. 254, 255. After Health South discharged Silva, she moved into Ms. Lucero's home and was living with her at the time of the administrative hearing. Ms. Lucero testified she was familiar with seizure activity because her brother suffered from seizures. Tr. 254. Ms. Lucero described Silva's seizures as starting with her right thumb twitching "real funny" followed by staring for about five to six minutes. *Id.* Ms. Lucero further testified Silva was unresponsive during her seizure and a "few more minutes" after the seizure. *Id.* On August 5, 1997, Silva also reported having seizures to Dr. Herman Brock, a psychologist who performed a psychological evaluation at the request of the New Mexico Disability Determination Services.

In his Decision, the ALJ found Silva's petit mal seizures were not severe. Tr. 20. The ALJ noted that Silva had reported having petit mal seizures and was on anticonvulsive medication since her surgery in May, 1996. *Id.* Nonetheless, the ALJ concluded the record did not document any seizure activity. *Id.* Pursuant to 20 C.F.R. § 416.912 (b)(3), the ALJ was required

---

[3] Dilantin is indicated for control of generalized tonic-clonic (grand mal) and complex partial (psychomotor, temporal lobe) seizures and prevention and treatment of seizures occurring during or following neurosurgery. *Physician's Desk Reference* 2278 (53rd ed. 1999).

to accept Ms. Lucero's and Silva's testimony as evidence of seizure activity. Section 416.912(b)(3) states:

> (b) What we mean by "evidence." Evidence is anything you or anyone else submits to us or that we obtain that relates to your claim. This includes, but is not limited to:
>
> (3) Statements you or others make about your impairment(s), your restrictions, your daily activities, your efforts to work, or any other relevant statements you make to medical sources during the course of examination or treatment, or to us during interviews, on applications, in letters, and in testimony in our administrative proceedings;

The Court finds Silva met her burden of showing her seizures have more than a minimal effect on her physical and mental abilities to do basic work activities. In light of Dr. Babur's opinion that Silva would be prone to seizures because of her extensive brain injury, a consultative examination may be required for proper resolution of Silva's disability claim. On remand, the ALJ should request a consultative evaluation by a neurologist for evaluation of her seizure disorder, including an EEG, and then determine whether Silva meets Listing 11.03.

Silva also contends the ALJ's credibility determination is not supported by substantial evidence and is contrary to law. Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).

In this case, the ALJ found as follows:

Testimony, where indicative of mental limitations of the claimant of such severity as to preclude all categories of substantial gainful activity, was not supported by the evidence as a whole and therefore lacked credibility.

7

> As will be shown in the records summarized below, including the claimant's daily activities, and treating and consulting physician's reports, there is no objective evidence that the claimant is unable to perform any work activity as alleged.

Tr. 13. However, the ALJ never set out the specific evidence he considered in determining Silva's complaints were not credible. On remand the ALJ should reevaluate his credibility determination and set forth the specific evidence he relies on in evaluating Silva's credibility.

In his Decision, the ALJ also stated that Ms. Lucero testified that Silva continued to provide good care to her children, was able to cook and drive short distances. Tr. 18. This is contrary to Ms. Lucero's testimony. Ms. Lucero testified Silva and her three children had moved in with her after Silva was discharged from Health South Rehabilitation Hospital. Tr. 255. In response to questions from Silva's advocate, Ms. Lucero testified as follows:

Question: I understand the children have been with you most of the time?

Answer: Because she wasn't able to take care of them. She, she still isn't able to. When she got out she, she – how can I explain it" She just, she can't function. She doesn't know how to take care of the children. For the month-and-a-half that she did take them– she tried to take care of them but she was abusing them and I had to take them – bring them back. She was abusing them. And before she never was like this. She used to really take care of her children really good. She doesn't know anymore. I have to practically [do] everything for them. And sometimes I have to scold her when she's doing certain things wrong, you know, to remind her you know, about what she's doing wrong. She's just not the same person anymore.

Question: What does Anna Monique do on an average day at home?

Answer: Not much, she, she can't focus on anything. She tries. She, she'll start trying to do something and she'll leave it. She'll forget, I guess, she'll go sit back down. Sometimes she'll try to cook. She, she'll burn the food, you know.

Question: She forgets to – that the food's on the stove?

Answer: Yeah. She's she's very forgetful, very. Big change in her personality, a big change with, you know – big change.

8

| | |
|---|---|
| Question: | So you, do you do most of the household work? |
| Answer: | Yes, I do the housework. |
| Question: | Does Anna Monique do anything? |
| Answer: | Well, she tries to. She'll try, she helps– she tries to help. She's trying with the children too, you know, but she's not, she's not ready to– she's just can't focus on anything. She's you know– |
| Question: | How about shopping? Does Anna Monique do any shopping? |
| Answer: | Oh, no, I, I go. I do all the shopping. |
| Question: | Why, why doesn't Anna Monique do it? |
| Answer: | Because she will not remember. |
| Question: | Okay. |
| Answer: | She could be in a – like it's like, I can say for instance why she wents (phonetic) – she say she's going to go around the block, she got confused and got lost. Sometimes we'll be in the store together and I'll turn around and she'll just be standing that same place. I have to, you know, kind of like– I guess you could say kind of wake her up and tell her, Monique, come on. You know, come, follow me. So she'll come, but she can't shop or anything. |

Tr. 255-56. On remand, the ALJ should review the transcript and not misconstrue Ms. Lucero's testimony.

Finally, Silva contends the ALJ's application of the grids was contrary to law in light of her nonexertional impairments. As a general rule the grids should not be applied conclusively "unless the claimant could perform the **full range of work** required of [the pertinent RFC] category on a daily basis and unless the claimant possesses the physical capabilities to perform **most of the jobs** in that range." *Ragland v. Shalala*, 992 F.2d 1056, 1057 (10th Cir. 1993)(emphasis added). "[R]esort to the grids is particularly inappropriate when evaluating

nonexertional limitations such as pain and mental impairments." *Hargis v. Sullivan,* 945 F.2d 1482, 1490 (10th Cir. 1991). The grids may, however, be used to direct a conclusion if the claimant's nonexertional impairments do not significantly reduce the underlying job base. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)(holding that the ability to perform a "substantial majority" of work in RFC assessment suffices for purposes of the grids). This is because only significant nonexertional impairments limit the claimant's ability to do the full range of work with a classification. *See Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993).

In a letter dated November 19, 1997, Dr. Reeve opined Silva "would have a great deal of difficulty maintaining any occupation **at this time.**" Tr. 247 (emphasis added). In his letter, Dr. Reeve indicated he treated Silva for severe head injury and she "had poor cognitive skills and, **at this time**, [he] believed [Silva] probably remains disabled from performing any occupation." *Id.* (emphasis added). The ALJ discounted Dr. Reeve's opinion because Dr. Reeve had not indicated how long it had been since he had seen Silva. Tr. 18. However, Dr. Reeve specifically requested he be contacted if there were any questions in regard to the letter. Tr. 247. Moreover, the letter clearly indicates Dr. Reeve's opinion was based on Silva's condition "at this time" and not her condition while a patient at Health South Rehabilitation Hospital.

On August 5, 1997, Dr. Herman Brock evaluated Silva and administered the Wechsler Adult Intelligence Scale-Revised (WAIS-R) and the Wechsler Memory Scale-Revised (WMS-R). Tr. 222-27. Dr. Brock found Silva exhibited some "small improvement in intellectual functioning with a decrease in general memory skills." Tr. 227. Dr. Brock also found verbal memory and attention/concentration delays which he opined would "impede her daily functioning and may limit her opportunities to seek gainful employment." Tr. 226.

10

On October 3, 1996, Dr. Kreuch, a clinical neuropsychologist, found Silva had ongoing neurocognitive impairments, secondary to traumatic brain injury. Tr. 221. The results of Dr. Kreuch evaluation indicated Silva had difficulties of attention and concentration, organization and problem solving, and cognitive flexibility. Tr. 220. Dr. Kreuch opined Silva "might be able to handle rote clerical tasks with adequate supervision." *Id.*

In light of Silva's substantial cognitive deficits, which seriously affect her ability to perform work, the ALJ erred in relying on the grids. On remand the ALJ should consult a vocational expert.

## **RECOMMENDED DISPOSITION**

The ALJ did not apply correct legal standards and his decision is not supported by substantial evidence. Silva's Motion to Remand for Rehearing, filed February 5, 2001, should be granted to allow the ALJ to reevaluate Silva's seizure disorder, reevaluate his credibility determination, and consult a vocational expert.

									**JOE H. GALVAN**
									**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

Within ten days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to 28 U.S.C. § 636 (b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.